NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SIMON DOUEK, Debtor. | |
| SIMON DOUEK, | Civ. No. 21-02983 |
| Plaintiff-Appellant, | OPINION |
| v. | |
| NIKON, INC., | |
| Defendant-Appellee. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on appeal of the judgment of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") filed by Simon Douek ("Douek"). The Court has decided this matter based on the parties' written submissions and without oral argument, pursuant to Rule 8019 of the Federal Rules of Bankruptcy Procedure. For the reasons stated herein, the judgment of the Bankruptcy Court (No. 17-20789, ECF No. 130) is affirmed.

## BACKGROUND

**I.    Factual Background**

The following facts are uncontested unless otherwise noted. In July 2016, Appellee Nikon ("Nikon") obtained a judgment ("the Nikon Judgment") against Douek for $697,418.28 in the Supreme Court of the State of New York, County of Suffolk. (Appellant's Ex. B at 18, ECF No. 5-2.) Nikon docketed the Nikon Judgment in the Superior Court of New Jersey as a statewide judgment lien (the "Nikon Lien"). (Appellee's Br. at 6, ECF No. 7.) Douek claims

1

Nikon "never executed and levied on its lien" and that the lien was "unperfected." (Appellant's Br. at 3, ECF No. 5.)

In May 2017, Douek filed a voluntary petition for relief ("the Petition") under Chapter 7 of the Bankruptcy Code. (*Id*.) In the Petition, Douek listed the Nikon Judgment as an unsecured debt. (Appellant's Ex. A at 45, ECF No. 5-1.) The Bankruptcy Court appointed Daniel E. Straffi as the Chapter 7 Trustee ("the Trustee") to administer the bankruptcy estate ("the Estate"). (Appellant's Br. at 3.) On January 3, 2018, the Bankruptcy Court entered an Order of Discharge for Douek. (Appellee's App. at 161, ECF No. 7-1.)[1]

On January 19, 2018, Nikon filed its first proof of claim ("Claim 1-1") with the Bankruptcy Court. (Appellant's Ex. B at 13.) In Claim 1-1, Nikon asserted a claim of $697,418.28 against Douek. (*Id*.) The proof of claim form has a section titled "Secured Claim." (*Id*.) Nikon filled out that section. Under "Basis for perfection," Nikon listed "FILED JUDGEMENT." (*Id*.) Under "Nature of property or right of setoff" there are three options: (1) "Real Estate;" (2) "Motor Vehicle;" and (3) "Other." (*Id*.) Nikon checked the box next to "Other" and wrote "ALL ASSETS OF THE DEBTOR." (*Id*.)

A.   *The Real Property*

In May 2017, Douek had a fifty percent interest in the real property located at 226 Elberon Avenue in Allenhurst, New Jersey ("the Property"). (*Id*. at 29.) Douek's spouse owns the other fifty percent interest in the Property. (Appellee's Br. at 7.) On the Petition, Douek claimed the value of the Property was $2,300,000. (Appellant's Ex. A at 29.)

Douek and his spouse obtained three mortgages against the Property. Shellpoint Mortgage Servicing held the first mortgage of $795,340.78. (*Id*. at 37.) JP Morgan Chase held

---

[1] The Court refers to the page numbers at the bottom right of Appellee's appendix.

2

the second mortgage of $520,000. (*Id*. at 36.) Eli Zami held the third mortgage of $532,000. (*Id*.) In sum, the three mortgages encumbered $1,847,340.78 of the Property's $2,300,000 value. Therefore, the remaining equity in the Property was $452,659.22 ($2,300,000 equity value minus $1,847,340.78 of cumulative mortgage encumbrance). Both Douek and Nikon agree that Douek's share of that equity was worth approximately $226,329.61 at the time of the petition, which is the $452,659.22 in remaining equity, divided by two because he splits this with his wife.[2] (Appellant's Br. at 3; Appellee's Br. at 7.) Additionally, on the Petition, Douek exempted $23,675 of his equity under 11 U.S.C. § 522(d)(1). (Appellant's Ex. A at 35.) Therefore, the equity value of the Property to the Estate was $202,654.61 as of the May 2017 Petition ($226.329.61 minus the $23,675 exemption under 11 U.S.C. § 522(d)(1)).

  B. *The Trustee's Abandonment of the Property*

  Section 554 of the Bankruptcy Code provides that a bankruptcy trustee may "abandon" property from the estate if that property is "burdensome" or "of inconsequential value and benefit to the estate." 11 U.S.C. § 554. When a trustee abandons property from the estate, the property reverts to the debtor. 5 *Collier on Bankruptcy* ¶ 554 (16th ed. 2021). Additionally, a party can request that a trustee abandon property. 11 U.S.C. § 554(b).

  Douek believed he held "little or no equity in the Property" and requested that the Trustee abandon his interest in the Property. (Appellant's Ex. B at 63.) The Trustee disagreed. (*Id*.) The Trustee determined a sale of the Property would yield a profit for the Estate—which, in turn, could be used to pay Douek's creditors. (*Id*.)

---

[2] Douek's brief states "As of the Petition Date, the Debtor opined on his petition that there was $226,000 of equity in his property after valid perfected mortgages." (Appellant's Br. at 5, ECF No. 5.) Nikon's brief calculates the value as $226,329.65. (Appellee's Br. at 7, ECF No. 7.) This Court's arithmetic leads to $226,329.61 ($452,659.22 divided by 2).

In June 2018, Douek and the Trustee, on behalf of the Estate, negotiated an agreement ("the Settlement Agreement"). (*Id*.) Douek agreed to pay $175,000 to the Estate as consideration for the "full and final settlement of Estate's rights, claims and/or defenses to [the Property], the Property, and the exemption [under § 522(d)(1)]." (*Id*. at 64.) In exchange, the Trustee agreed to file a notice of abandonment as to the Property. (*Id*. at 65.) This agreement allowed Douek to avoid a sale of the Property and allowed the Estate to avoid the expense and risks of a forced sale. (*Id*. at 63.) The Bankruptcy Court entered the Settlement Agreement as a Consent Order on June 27, 2018. (*Id*. at 62.) The Trustee filed a Notice of Abandonment on August 21, 2019. (Appellee's App. at 307.) No parties objected to the abandonment of the Property. (*Id*. at 308.)

    C.    *Douek's Motion to Avoid Liens*

On December 30, 2019, Douek filed a Motion to Avoid and Discharge Liens and Judgments ("Motion to Avoid") in the Bankruptcy Court under 11 U.S.C § 544. (Appellant's Br. at 3.) Douek made this Motion against Nikon and "other unperfected judgment lien holders." (*Id*.) The Motion to Avoid was intended to cancel any unperfected judgment liens, such as the Nikon Judgment, held by unsecured creditors. (*Id*.) This would allow the unsecured creditors to recover a share of the Estate's remaining value after secured administrative and priority claims were paid in full. (Appellee's App. at 200.) That share would be proportionate to the amount of the creditor's claim in relation to the total amount of unsecured debt—e.g., after lien avoidance, an unsecured creditor whose claim amounts to 80 percent of the total unsecured debt would receive 80 percent of the remaining value of the Estate. (*Id*.) Thus, here, this Motion would discharge the Nikon Lien and allow Nikon, as one of Douek's creditors, to recover a share of the Estate's remaining value after secured claims were paid in full. (*Id*.)

4

In January 2020, Nikon's counsel objected to Douek's Motion to Avoid, stating in an email to Douek's counsel that "an action to avoid a lien under 11 U.S.C. § 544 must be brought by the Trustee and not the debtor." (Appellee's App. at 68.) The following email exchange ensued: Douek's counsel responded: "It is clear that your client did not execute and levy and is a general unsecured creditor. I can simply refile in the state court and eliminate the lien but is that really necessary?" (*Id*. at 74.) Nikon's counsel responded: "Your client cannot strip off the lien in state court right away and my client is not going to just forego its rights. . . if there is no reason [to file in Bankruptcy Court], withdraw the motion . . . and file the motion when the time is right in state court." (*Id*. at 73.) Douek's counsel responded: "it is much easier [to file in Bankruptcy Court] and [I] always do it without objection but I see your point." (*Id*.)

In early February 2020, Douek filed a "Discharge Motion" in New Jersey Superior Court ("the State Court"), to which Nikon objected. (Appellant's Br. at 4.) Douek claims that there had been a "miscommunication": Specifically, Douek claims he withdrew the Motion to Avoid Nikon's lien from the Bankruptcy Court because, Nikon represented it would "not object" if the Discharge Motion was filed in the State Court. (*Id*.) The State Court scheduled oral argument for March 27, 2020. (*Id*.)

E.     *The State Court Decision*

In the State Court proceeding, Douek argued that the Nikon Lien should be canceled. (Appellee's App. at 185.) Douek's argument relied on the fact that, under the terms of the Settlement Agreement, he had paid $175,000 to the Trustee in exchange for the Trustee's interest in the Property. (*Id*.) From Douek's perspective, the Settlement Agreement eliminated Douek's remaining equity in the Property. (*Id*.) On Douek's theory, there was no asset or interest available to "secure" the Nikon Judgment as a lien. (*Id*.) Nikon was set to receive a share of that

5

$175,000—totaling approximately $114,000—as an unsecured creditor. (*Id.*) Douek argued that Nikon was entitled to no more than its share as an unsecured creditor. (*Id.*)

On May 7, 2020, the State Court ruled that the Nikon Lien survived Douek's bankruptcy "to the extent of [Douek's] equity" in the Property above the $23,675 exemption under 11 U.S.C. § 522(d)(1). (Appellee's App. at 211.) The State Court found the Trustee could not have avoided the Nikon Lien as to the remaining equity in the Property above $23,675. (*Id.*) Therefore, because the Trustee could not have avoided the remaining balance of the lien, Douek could not avoid the Nikon Lien either. (*Id.*) Douek filed a Motion to Reconsider that decision in the State Court. (Appellant's Br. at 8.) To this Court's knowledge, that motion is pending. (*Id.*)

  E. *Nikon's Second Amended Claim*

Additionally, in late February 2020, while the State Court action was pending, the Trustee contacted Nikon. (Appellee's App. at 213.) The Trustee believed Claim 1-1 was improperly filed as a secured claim and requested that Nikon file an amended, unsecured claim in the same amount. (*Id.*) On March 3, 2020, Nikon complied with the Trustee's request and filed an amended claim ("Claim 1-2") with the Bankruptcy Court. (Appellant's Ex. B at 20.). In Claim 1-2, Nikon left the "Secured Claim" section blank. (*Id.*)

**II.** **Proceedings in the Bankruptcy Court**

  A. *Douek's Motion to Clarify in the Bankruptcy Court*

On May 12, 2020, Douek filed a "Motion to Clarify Settlement" in the Bankruptcy Court. (Appellee's App. at 216.) Douek requested that the Bankruptcy Court clarify that the Settlement Agreement between Douek and the Trustee (1) abandoned the Property free and clear of all judgment liens under 11 U.S.C. § 544; (2) determine that any equity, if any, in the Property was

6

paid by Douek to the Trustee; and (3) declare Nikon's lien void as a result of Nikon's assertion that its claim was "unsecured" in Claim 1-2. (*Id*.)

Thereafter, on May 21, 2020, Nikon filed another amended version of its proof of claim ("Claim 1-3"). (Appellee's App. at 239.) In this third version of the claim, Nikon lists the judgment as partially secured. The "nature of property or right of setoff" is "Real Estate"—specifically a "Lien Against Non-Estate (Abandoned) Real Property." (*Id*.) Nikon asserted a secured claim of $202,654.65 against the Property and an unsecured claim of $494,763.63. (*Id*.)

B. *The Bankruptcy Court's Decision*

In December 2020, the Bankruptcy Court orally denied Douek's motion and allowed Nikon to amend its proof of claim. The Bankruptcy Court noted that "the equities of this case certainly favor [Douek]." (Appellee's App. at 33.) However, the Bankruptcy Court felt that the law favored Nikon for three reasons.

First, the Bankruptcy Court found that the Settlement Agreement was clear. (*Id*.) The Bankruptcy Court reasoned that "the Debtor paid $175,000 for the Trustee's abandonment of his property. Nikon, no other creditor, including Nikon, especially Nikon, were not parties to that settlement." (*Id*.) Therefore, there was "no way that the Debtor could have [a]ffected, or the Trustee, could have [a]ffected the validity or lack of validity of a lien without doing something further." (*Id*.)

Second, the Bankruptcy Court found that Nikon was allowed to file Claim 1-3 to amend and bifurcate Nikon's claim as partially secured by the Property. (*Id*.) The Bankruptcy Court stated that "I'm not really concerned about why [the Claim] was amended . . . I think it's properly amended." (*Id*. at 34.) Furthermore, the Bankruptcy Court found that "the lien that

7

survived the bankruptcy is in the amount of $202,054.65. and that the unsecured portion, of $494,763.63, is discharged upon distribution by the Trustee." (Appellee's App. at 37.)

Third, the Bankruptcy Court held that "Debtor's claims are barred by [the] Rooker-Feldman [Doctrine] and if not Rooker-Feldman, certainly res judicata and res estoppel because of [the State Court]'s decision." (*Id*.) As an aside, the Bankruptcy Court noted that it agreed with the State Court's interpretation of New Jersey law and the Bankruptcy Code. (*Id*. at 34.) Judge Gravelle concurred that the Trustee could not have avoided Nikon's lien on the property because the Estate's equity in the Property—prior to the Settlement Agreement between Douek and the Trustee—was too valuable. (*Id*.)

On February 16, 2021, the Bankruptcy Court entered an order in favor of Nikon. (*Id*. at 1.) The order held that:

> 1. [Douek's Motion to Clarify] is denied as set forth herein.
> 2. Claim #1-3, filed by Nikon, Inc., in the amount of $697,418.28, be and hereby is bifurcated and allowed as an unsecured claim in the amount of $494,763.63 and a secured claim in the amount of $202,654.65 (the "Nikon Secured Claim"). The Nikon Secured Claim is a judgment lien ("Judgment Lien") against the Debtor's 50% interest in real property located at 226 Elberon Avenue, Allenhurst, New Jersey (the "Elberon Property").
> 3. The Nikon Secured Claim is discharged as an in personam obligation of the Debtor, however, the Nikon Secured Claim shall pass through the Debtor's bankruptcy proceeding as an in rem lien against the Debtor's 50% interest in the Elberon Property.
> 4. The Judgment Lien shall be fixed at the sum of $202,654.65 and shall bear interest at the State of New Jersey post-judgment interest rate on that sum, effective as of May 25, 2017.

(*Id*. at 2–3.) Douek appealed the Bankruptcy Court's order to this Court.

## **LEGAL STANDARD**

A district court reviews a bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse. *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010) (citing *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 316 (3d Cir. 2003)).

8

**DISCUSSION**

Douek argues that (1) the Bankruptcy Court should not have allowed Nikon to file the "partially secured" Claim 1-3 because Claim 1-2 described the Nikon Judgment as unsecured; (2) if Nikon is allowed to file Claim 1-3, no equity existed to "secure" Nikon's claim on the Property after the Settlement Agreement; and (3) Douek had the right to object to the Nikon Lien and avoid the lien under § 502 and § 506 of the Bankruptcy Code. (Appellant's Br. at 21.)

**I.    Nikon's Claim 1-3 Is Allowed.**

Douek argues that the Bankruptcy Court should not have allowed Nikon to file the amended Claim 1-3. Nikon responds that (1) Douek has no standing to challenge Nikon's Proof of Claim and (2) the Bankruptcy Court properly allowed Nikon to amend its claim.

   A.    *Douek Has Standing to Challenge Nikon's Amended Claim.*

Typically, a chapter 7 debtor has no standing to challenge a creditor's proof of claim. *In re Toms*, 229 B.R. 646, 650 (Bankr. E.D. Pa. 1999). However, there are two exceptions to that general rule. *Id*. First, a debtor has standing if the debtor might be able to satisfy all debts with the assets from the estate and be left with some amount remaining. *Id*. Second, a debtor has standing to object to non-dischargeable claims—i.e. claims that will survive against the debtor after bankruptcy. *Id*. at 651. The inquiry focuses on whether the debtor has a pecuniary interest in the allowance or disallowance of the claim. *Id*. at 650.

The second exception applies here. "A chapter 7 debtor's lack of standing to object to a claim is premised upon the notion that the allowance of the claim will have no effect on the debtor's rights; this notion, in turn, is premised upon the dischargeability of that claim." *Id.* Here, the crux of the disagreement between the parties is the extent to which Douek's property is subject to a non-dischargeable, secured claim. The Bankruptcy Court's order stated, "the Nikon

Secured Claim *shall pass through* the Debtor's bankruptcy proceeding as an *in rem* lien against the Debtor's 50% interest in the Elberon Property." (Appellee's App. at 3 (emphasis added).) A claim that asserts a non-dischargeable lien against Douek's property affects Douek's right to that property. Therefore, Douek has a pecuniary interest in the allowance or disallowance of Nikon's claim. Douek has standing to object.

      B.    *The Bankruptcy Court Properly Allowed Nikon to Amend Its Claim.*

"Bankruptcy Rule 7015 provides that amendments to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure, Fed. R. Bankr. P. 7015, which commits the decision to grant or deny leave to amend to the trial court's sound discretion." *Interface Grp.-Nevada v. TWA (In re TWA)*, 145 F.3d 124, 141 (3d Cir. 1998). "Bankruptcy courts liberally construe Rule 15(a) and typically permit amendment; the focus of a court's inquiry will typically be on whether the non-moving party would be unfairly prejudiced by permitting the amendments." 10 *Collier on Bankruptcy* ¶ 7015.04 (16th ed. 2021). Courts also focus whether the amended claim is really a new claim "under the guise of amendment." 4 *Collier on Bankruptcy* ¶ 502.03 (16th ed. 2021). Bankruptcy courts maintain significant discretion in determining whether to permit an amendment to a timely filed claim. *Id*.

The Bankruptcy Court did not abuse its discretion when it allowed Claim 1-3. First, Nikon's amended claim is not a "new" claim "under the guise of amendment." *Id*. Claims 1-1, 1-2, and 1-3 each assert a claim of $697,418.28—stemming from the Nikon Judgment. The difference between Claim 1-2 and Claim 1-3 is that Claim 1-3 reclassifies the category of debt—from unsecured in Claim 1-2 to partially secured in Claim 1-3. Claim 1-3 reflects the ruling of the State Court and proposes a new theory of recovery from Claim 1-2, not a new claim. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115,

133 (2d Cir. 2005) ("Amendment to a claim is freely allowed where the purpose is . . . to plead a new theory of recovery on the facts set forth in the original claim.") Relatedly, any prejudice to Douek was minimal because Douek and Nikon thoroughly litigated the extent to which Nikon's lien could survive bankruptcy in State Court. (*See* Appellee's App. at 211.) The amended claim was not a surprise maneuver. Rather, Claim 1-3 merely reflects the outcome of that State Court litigation. (*See id.*) Thus, because Claim 1-3 was not a new claim and any prejudice to Douek was minimal, the Bankruptcy Court's decision to allow the Claim 1-3 is affirmed.

**II.     The Settlement Agreement Did Not Affect Nikon's Secured Lien.**

In the alternative, Douek argues that even if Nikon is allowed to file Claim 1-3, no equity existed to "secure" Nikon's secured claim on the Property after the Settlement Agreement. (Appellant's Br. at 21.) In other words, Douek's position is that the Bankruptcy Court miscalculated the extent of his equity in the Property after the Settlement Agreement. (Appellant's Br. at 12.)

The Bankruptcy Code allows lien avoidance "to the extent that such lien impairs an exemption to which the debtor would have been entitled under [11 U.S.C. § 522(b).]" 11 U.S.C. § 522(f). A lien impairs an exemption to the extent that "the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2)(A). The value of a property is determined as of the date of the filing of the petition. 11 U.S.C. § 522(a)(2). When the debtor has one-half interest in property held jointly with a non-debtor spouse, only one-half of total mortgage debt is applied in calculating total liens on the property under the formula. *See Miller v. Okmi Sul (In re Miller)*, 299 F.3d 183 (3d Cir. 2002).

11

New Jersey law provides that a debtor may cancel a real property lien if a bankruptcy trustee could have discharged the lien under the Bankruptcy Act. N.J.S.A § 2A:16-49.1. Applying 11 U.S.C. § 522(f) and New Jersey caselaw, the State Court found that the Nikon lien survived "to the extent of [Douek's] equity" in the Property above the $23,675 exemption under 11 U.S.C. § 522(d)(1).[3] (Appellee's App. at 211.) The Bankruptcy Court held that the extent of Douek's equity in the Property was $202,654.65—the exact amount of Nikon's secured portion of Claim 1-3. (*Id*. at 37).

Douek, Nikon, and the Bankruptcy Court each agree that Douek's equity in the Property was worth approximately $202,654 to the Estate at the time of the Petition:

| Description | Amount |
|---|---|
| Total Value of Property at Time of Petition | $2,300,000.00 |
| **Douek's One-Half Share of Property Value** | **$1,150,000.00** |
| | |
| First Mortgage | $795,340.78 |
| Second Mortgage | $520,000.00 |
| Third Mortgage | $532,000.00 |
| Total Encumbrance | $1,847,340.78 |
| **Douek's One-Half Share of Encumbrance** | **$923,670.39** |
| | |
| **Homestead Exemption § 522(d)(1)** | **$23,675.00** |
| | |
| (Value – Encumbrance – Exemption) | $1,150,000.00 - $923,670.39 - $23,675.00 |
| **Douek's Remaining Equity** | **$202,654.61**[4] |

---

[3] Douek has moved for reconsideration of the State Court opinion. The Court notes that the State Court referenced *Menell v. First Nat'l Bank (In re Menell)*, 37 F.3d 113 (3d Cir. 1994) when it applied § 522(f) and determined that Nikon's lien was not subject to total avoidance. (Appellee's App. at 17.) However, when Congress amended § 522(f) in 1994, it overruled *In re Menell*'s application of the § 522(f) calculation. *See Summit Bank v. Vessel "Harbor Light"*, 260 B.R. 694, 698 (D.N.J. 2001) (describing the correct formula after 1994). The Court is unaware of any further developments in the State Court case after Douek filed the present appeal.

[4] As noted above, the Bankruptcy Court adopted Nikon's calculation which led to $202,654.65. This Court's math reaches $202,654.61.

Douek argues that the Settlement Agreement eliminated the remaining equity in the Property. (*Id*.) Douek argues that a cash for equity exchange was the "intent" of the Settlement Agreement. (Appellant's Br. at 12.) Douek claims that after he paid $175,000 to the Estate, his equity in the Property was zero dollars. (*Id*.) On this theory, Douek held no asset to "secure" Nikon's $202,654.61 secured lien. (*Id*.) Alternatively, Douek proposes two theories as to how the Settlement Agreement largely reduced his remaining equity to either roughly $38,000[5] or $28,000.[6] (*Id*.) In sum, Douek wants to credit the $175,000 he gave to the Estate for abandonment against Nikon's secured claim.

The Bankruptcy Court disagreed. (Appellee's App. at 37.) Judge Gravelle held that the $175,000 paid in the Settlement Agreement did not reduce the amount of Nikon's Lien. (*Id*.) The Court noted that the value of Nikon's Lien under the State Court decision is based on Douek's excess equity after a § 522(f) analysis. (*Id*.) The Court held that Douek's equity is determined based on "the value of the property *as of the date of the petition*." (*Id*. (emphasis added).) Therefore, the Bankruptcy Court held the "Judgment Lien shall be fixed at the sum of $202,654.65." (*Id*. at 2.)

The Bankruptcy Court was correct. Under § 522, the Settlement Agreement does not affect the avoidance analysis because it was enacted after the Petition date. The "value" of a property is determined as of the date of the filing of the petition. 11 U.S.C. § 522(a)(2). Thus, the extent of Douek's equity—and, by extension, the value of Nikon's Lien under the State Court's decision—is calculated as of that date. As shown above, Douek's equity as of the Petition date

---

[5] The $38,000 amount comes from $175,000 (the settlement amount) - $114,000 (the amount Nikon would have received via its share of the $175,000 as an unsecured creditor) - $23,000 (Douek's rough approximation of the § 522(d)(1) exemption).
[6] The $28,000 amount comes from $226,000 (Douek's approximate equity pre-exemption) - $23,000 (the § 522(d)(1) exemption) - $175,000 (the settlement amount).

13

was $202,654.61. Thus, the Bankruptcy Court's ruling is affirmed.[7]

### III.   Douek's Avoidance Arguments Under §§ 502 And 506 Are Inapposite.

Finally, Douek argues that the Bankruptcy Court failed to recognize that he "had the right to object to the Nikon lien and avoid such lien under § 502 and § 506 of the Bankruptcy Code." (Appellant's Br. at 21.) Neither § 502 nor § 506 convey a right for Douek to avoid Nikon's lien.

Section 502(d) does not apply in this case. Douek argues that § 502(d) means that Nikon's lien "must be voided." (Appellant's Br. at 18.) Section 502(d) states:

> [T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title [] or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title [], unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title [].

11 U.S.C. § 502(d) (internal cross reference citations omitted). Section 502(d) forces creditors

---

[7] The Court again notes the four-cent discrepancy between its calculations and those of the parties. Both Douek and Nikon were somewhat casual with their arithmetic in this appeal. This Court notes that such informality—even to the extent of a four-cent error—could have serious consequences. For example, § 522(f) states that a lien can be avoided to the extent it impairs an exemption under the Bankruptcy Code. A lien impairs an exemption if the sum of—(i) the lien, (ii) all other liens, and (iii) any applicable exemptions—exceeds the debtor's equity in the property as of the petition date. Congress enacted this version of § 522(f) in 1994. 5 *Collier on Bankruptcy* ¶ 522.11 (16th ed. 2021) (describing the history of § 522(f)). The legislative history of the 1994 version of § 522(f) implies that if the sum of (i) – (iii) exceeds the value of the property *at all*, then the *entire* lien could be avoided. *See, e.g.*, *In re Jakubowski,* 198 B.R. 262 (Bankr. N.D. Ohio 1996) (voiding an entire lien when sum of (i) – (iii) exceeded property value). Here, the sum of (i) Nikon's secured Claim 1-3, (ii) the three mortgages, and (iii) the § 522(d)(1) exemption would outstrip Douek's equity in the Property by four cents. Thus, under the view espoused in legislative history, Douek could argue that the entire Nikon Judgment was subject to avoidance due to this four-cent excess. However, other courts have found that the words "to the extent" in § 522(f) mean that only the four-cent excess could have been avoided. *See In re Silveira*, 141 F.3d 34 (1st Cir. 1998). The Third Circuit took the latter view in *In re Menell*. *See* 37 F.3d at 115. However, that case was decided prior to § 522(f)'s revision in 1994. The proper interpretation of § 522(f) has not been raised as a question in this appeal. Given the procedural posture of this case, the § 522(f) avoidance analysis rests in Douek's State Court action to cancel Nikon's lien under N.J.S.A § 2A:16-49.1. Therefore, the Court takes no position as to the proper interpretation of § 522(f). Rather, the Court urges caution when arithmetic is central to the case.

who hold estate property to return that estate property before asserting their own claims on the estate. Nikon is not an "entity from which property is recoverable" under the Bankruptcy Code, because Nikon holds no Estate property. *Id*. Second, Nikon is not an "entity . . . that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a)" because Nikon is not the transferee of any transfer—whether avoidable or not. *Id*. Thus, any argument grounded in § 502(d) is not relevant to this case.

Similarly, § 506 does not allow Douek to avoid Nikon's lien. Douek argues that "Under Section 506(d), Nikon's lien must be removed." Section 506(d) states:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title [] or
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title [].

11 U.S.C.S. § 506(d) (internal cross reference citations omitted). The Bankruptcy Court held that "506(d) cannot stand on its own, it's more a definitional section of the Code. And requires some action to be taken to avoid a lien in order to fit into the definition of 506(d) which allows a secured interest to be removed." (Appellee's App. at 36.) This Court agrees. As shown above, Nikon's claim is an allowed secured claim. Therefore, Section 506(d) does not apply.

## CONCLUSION

For the foregoing reasons, the Court will affirm the decision of the Bankruptcy Court. An appropriate Order will follow.

Date: <u>January 25, 2022</u>                              */s/ Anne E. Thompson*
                                                                                 ANNE E. THOMPSON, U.S.D.J.